UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 14-cr-30010-MGM |
| | ) | |
| OSVALDO VARGAS, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 88)

ROBERTSON, U.S.M.J.

I. Introduction

Defendant Osvaldo Vargas is charged with one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841 (Dkt. No. 2). Currently before the court is Defendant's motion to dismiss (Dkt. No. 88), which the government has opposed (Dkt. No. 91). The motion has been referred to the undersigned for report and recommendation (Dkt. No. 89). For the reasons stated below, the court recommends that Defendant's motion be denied.

II. Background

A. Facts[1]

On March 8, 2014, Holyoke Police Detectives Brendan Boyle and Jared Hammel, traveling in an unmarked vehicle, turned onto South Bridge Street in Holyoke, Massachusetts. The contiguous four-block radius around the area was known to the detectives to be a high crime area, and the site of numerous violent crimes and frequent narcotic activity and of significant gang activity involving the "La Familia" criminal street gang. As the detectives drove past the

---

[1] The facts are drawn from the court's findings of facts following a two-day hearing on Defendant's motion to suppress, as reflected in the court's memorandum and order denying Defendant's motion (Dkt. No. 69).

Lafayette Bar, they observed four individuals on the sidewalk, at least some of whom were watching a video on a cell phone. Based on previous encounters, the detectives were able to visually identify one of the individuals as Defendant and another as an individual named Santiago. Both Defendant and Santiago wore baggy clothing, including sweatshirts with front pockets and loose sweatpants.

The detectives parked on the street near the group of men. Immediately thereafter, both detectives observed behavior leading them to believe that the group had noticed the detectives' presence in the vicinity. One of the individuals began to walk in the direction of the Lafayette Bar and went inside, while Defendant walked away along South Bridge Street. The detectives observed Santiago quickly reach into the front pocket of his sweatshirt.

Detective Hammel had previously arrested Santiago following a shots fired call and had thereafter recovered two firearms that had been within Santiago's reach. Based on Hammel's training and experience, he knew individuals possessing firearms frequently keep these firearms in the pockets of their hooded sweatshirts. As a result of these observations, Detective Hammel exited his vehicle, drew his gun, and approached Santiago while yelling, "show me your hands." Santiago then lifted his shirt to demonstrate to Detective Hammel that he was unarmed. Upon seeing this motion, Detective Hammel reholstered his firearm. After he conducted a pat-frisk, which revealed that Santiago was not armed, Detective Hammel's inquiry of Santiago ended.

As Detective Hammel approached Santiago, Detective Boyle simultaneously walked toward Defendant. During his approach, Detective Boyle smelled the odor of burnt marijuana and observed Defendant to be smoking marijuana in violation of a Holyoke City Ordinance. Detective Boyle was aware of Defendant's prior arrests for crimes of violence, firearm possession, and drug distribution, including an incident in 2011 or 2012 in which Defendant ran

2

from the police and threw a handgun to the ground, which discharged upon impact. Detective Boyle therefore decided to perform a pat-frisk as a safety precaution to determine whether Defendant was in possession of a firearm before issuing a citation for violation of the ordinance.

Upon patting down Defendant's right side pants pocket, Detective Boyle felt an object he immediately recognized as a group of bags of heroin held together by a rubber band. Detective Boyle then conducted a search incident to arrest. In a second pocket, Detective Boyle found another 10 bags of heroin held together by a rubber band, along with two other bundles containing 20 bags of heroin, for a total of 38 bags of heroin on Defendant's person. Detective Boyle also seized $1,829.00 from one of Defendant's pockets and two cell phones at booking. The drug analysis from the UMASS drug lab confirmed that the bags contained heroin.

### B. Procedural History

On May 1, 2014, a grand jury indicted Defendant for violation of 21 U.S.C. § 841, Possession with Intent to Distribute Heroin (Dkt. No. 2). On May 29, 2014, the government produced certain discovery to Defendant, including a narrative report written by Detective Boyle[2] and a copy of Defendant's criminal record (Dkt. 16). On July 1, 2014, Defendant filed a letter requesting additional discovery pursuant to Local Rule 116.3, including, *inter alia*, the basis for Officer Boyle's assertions in his report that Defendant was "known to Detectives" and had been involved in "many incidents involving violent crime, narcotics and gun calls," as well as all incident reports concerning "past incidents" referenced in Officer Boyle's report (Dkt. No. 17). The government responded on July 2, 2014, stating that Officer Boyle's assertions were based, in part, on Defendant's many prior arrests (Dkt. No 20). The government declined to

---

[2] The government's discovery letter refers to the report as a "Springfield Police Report" (Dkt. No. 16). However, in a letter requesting additional discovery, Defendant identifies the report provided as a "Narrative of [Holyoke] Officer Brendan J. Boyle" (Dkt. No. 17).

provide any additional information or materials in response to these requests as beyond the scope of Fed. R. Crim. P. 16 and LR, D. Mass. 116 (*id*.). On July 22, 2014, Defendant filed a motion to compel additional discovery, including responses to the requests set forth above (Dkt. No. 25), which the government opposed (Dkt. No. 28). On August 14, 2014, the court (Neiman, J.) denied Defendant's motion to compel as to these requests (Dkt. No. 30).

On November 12, 2014, Defendant filed a motion to suppress the evidence seized from Defendant (Dkt. No. 42). The government opposed the motion on November 26, 2014, arguing, *inter alia*, that Detective Boyle was justified in pat-frisking Defendant for his safety based upon his reasonable belief that Defendant may have been in possession of a firearm because:

> Det. Boyle knew that Vargas had previously been arrested for crimes of violence and drug distribution crimes. Specifically, Det. Boyle knew about a prior arrest in which while running from the police Vargas threw a handgun to the ground which discharged when it hit the ground. Detective Boyle also knew that Vargas had been arrested twice previously for illegal firearms possession.

(Dkt. No. 47 at 2).

The court held a two-day evidentiary hearing on Defendant's motion to suppress on December 12, 2014 and January 22, 2015 (Dkt. Nos. 51, 66). On February 18, 2015, the court issued a memorandum and order denying Defendant's motion to suppress (Dkt. No. 69). The court held that Detective Boyle was justified in his brief stop of Defendant based on having probable cause to believe Defendant was violating Holyoke City Ordinance § 54-18. The court further held that Detective Boyle was justified in pat-frisking Defendant because of his objectively reasonable belief Defendant may have been armed and dangerous, based most significantly on Detective Boyle's knowledge of the prior encounter with Defendant in 2011 or 2012 involving the thrown handgun, as well his knowledge Defendant had been arrested

4

previously for violent crimes and possession of illegal firearms.[3]  Having concluded that Detective Boyle was justified in stopping and pat-frisking Defendant, the court held that Detective Boyle lawfully seized the heroin from Defendant pursuant to the "plain-feel" doctrine.

After the ruling, on March 10, 2015, Defendant filed a motion for further discovery, in which Defendant sought discovery regarding when, where, and how the "officers learn[ed] of the detailed history of defendant," and "when did the government request that officer provide [sic] the material to defendant" (Dkt. No. 72 at 2).  The government responded on March 23, 2015, requesting that the court deny Defendant's motion for further discovery.  On March 26, 2015, Defendant filed what he styled a motion to compel discovery and to enlarge the time in which to file defendant's motion to dismiss (Dkt. No. 76), in which he clarified that his motion for further discovery sought the same material he had sought in his initial motion for discovery, which the court had denied on August 13, 2014.  On April 10, 2015, the court denied Defendant's motion for further discovery, finding that the government had already produced Defendant's criminal history record, which included charges based on the 2011 or 2012 incident involving the thrown handgun, and that the government was not required to produce Holyoke Police Department incident reports unrelated to the charge currently pending against Defendant (Dkt. No. 85).  The court also held that there was no basis for reconsidering the court's original order denying the discovery where Defendant had not shown that reconsideration was justified on the basis of newly discovered evidence or an intervening change in the law, or that the court's prior ruling

---

[3] The court also took into account the following factors, which it found to be relevant: (1) Defendant's baggy, layered attire that would have made it difficult for Detective Boyle to decisively ascertain whether Defendant carried a weapon without pat-frisking him; (2) the fact that, at the time he decided to pat-frisk Defendant, Detective Boyle likely was not yet aware that Santiago was not armed; (3) Detective Boyle's knowledge that Defendant was a member of the La Familia street gang; (4) that Detective Boyle was engaged in his encounter with Defendant alone; (5) that Defendant had recognized Detective Boyle and walked away; and (6) that one of the individuals walked into the Lafayette bar, a hangout for La Familia.

was based on a manifest error of law or fact or was clearly unjust.

Defendant now seeks to have the indictment against him dismissed based on the government's alleged failure to produce discovery before the suppression hearing regarding the incident in 2011 or 2012 involving the thrown handgun. Defendant claims that the government's failure to produce discovery regarding this incident violates *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). The government opposes, arguing that it has scrupulously complied with its discovery obligations in this case.

III. Discussion

"*Brady* requires the prosecution, upon request, to produce material, exculpatory evidence … , while *Giglio* recognizes that this evidence often includes any understandings or agreements as to future prosecution between the government and one of its witnesses." *United States v. Rodriguez-Rivera*, 473 F.3d 21, 25 (1st Cir. 2007) (citing *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 155).

> In order to prevail on a *Brady* claim, a defendant must show that: (1) evidence was suppressed; (2) the evidence was favorable to the accused; and (3) the evidence was material to either guilt or punishment. *See Strickler v. Greene,* 527 U.S. 263, 281–82 (1999). With regard to the first prong, we do not consider favorable evidence suppressed "if the defendant either knew, or should have known[,] of the essential facts permitting him to take advantage of any exculpatory evidence." *Ellsworth v. Warden,* 333 F.3d 1, 6 (1st Cir. 2003) (quoting *United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir. 1982)). As for the second and third prongs, "[e]vidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature and 'material' if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different." *United States v. Prochilo,* 629 F.3d 264, 268 (1st Cir. 2011).

*United States v. De La Cruz-Feliciano*, No. 13-1593, 2015 WL 2223138, at *6 (1st Cir. May 13, 2015).

Defendant has not established any of the three essential prongs of a *Brady* violation. First, information regarding the 2011 or 2012 incident in which Defendant threw a handgun and it discharged was not suppressed. When Defendant sought information as to how Defendant was "known" to Holyoke Police officers, the government referred Defendant to the many prior arrests reflected in Defendant's criminal record, which the government produced it its initial May 29, 2014 disclosure, and which includes charges based on the thrown handgun incident. Further, on November 26, 2014, more than two weeks before the suppression hearing, the government disclosed Detective Boyle's knowledge of the incident involving the thrown handgun in its opposition to the motion to suppress. Defendant claims in his motion to dismiss that information about the incident was first revealed in testimony at the suppression hearing, but this claim is belied by the record. As such, there was no suppression.[4] *United States v. Soto-Alvarez*, 958 F.2d 473, 477 (1st Cir. 1992) ("*Brady* only applies to the discovery, after trial, of information which had been known to the prosecution but unknown to the defense.").

Second, Defendant makes no showing that evidence regarding the thrown handgun incident is favorable, either because it is exculpatory or impeaching in nature. "To establish a violation of *Brady,* a defendant must provide the court with some indication that the materials to which he or she needs access contain material and potentially exculpatory [or impeaching] evidence." *United States v. Brandon*, 17 F.3d 409, 456 (1st Cir. 1994). Defendant makes no argument, nor is there any rationale to support one, that information regarding the thrown handgun incident casts doubt on Defendant's guilt or tends to impeach the reliability of other

---

[4] The only discovery even arguably suppressed consists of incident reports regarding the thrown handgun incident. The court has already twice ruled Defendant is not entitled to such reports. Holyoke Police Department files involving matters unrelated to the charges currently pending against Defendant are not Brady material. *See, e.g., United States v. Ramos-Cartagena*, 9 F. Supp. 2d 88, 91 (D.P.R. 1998).

prosecution evidence, in particular, Detective Boyle's testimony. To the contrary, Detective Boyle testified at the suppression hearing consistently with the disclosures made regarding his knowledge of Defendant's record and the thrown handgun incident.

Finally, Defendant has not shown that he was prejudiced. Defendant acknowledges that to establish a *Brady* violation he must demonstrate that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). However, Defendant does not argue that the result of the suppression hearing would have been different. Instead, Defendant argues that he was prejudiced by not being able to properly prepare because he "based his motion to suppress strategy on the civil city ordinance and not the officer's new midstream disclosures of their belief that he was armed and dangerous because they had direct knowledge of his specific conduct" (Dkt. No. 88 at 3).

Defendant's argument as to prejudice is couched in terms of a delayed disclosure, rather than a non-disclosure, theory. "*Brady* also applies in cases where the Government delays disclosure of relevant evidence. In such cases, the defendant … must show 'that the delay prevented defense counsel from using the disclosed material effectively in preparing and presenting the defendant's case.'" *De La Cruz-Feliciano*, 2015 WL 2223138, at *6 (quoting *United States v. Van Anh,* 523 F.3d 43, 51 (1st Cir.2008)). *See also United States v. Lemmerer*, 277 F.3d 579, 587-88 (1st Cir. 2002) ("[I]n delayed disclosure cases, we need not reach the question whether the evidence at issue was 'material' under *Brady* unless the defendant first can show that defense counsel was 'prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case.'"). Here, Defendant cannot show that the government's disclosure, even assuming it was delayed, violated the strictures of *Brady*

by preventing him from using the disclosed material effectively in preparing for and presenting his case at the motion to suppress. The government disclosed Defendant's criminal record in its initial production of discovery, six months before the suppression hearing, and followed up with specific detail regarding the handgun throwing incident two weeks before the suppression hearing. All that was required of Defendant before the suppression hearing to ascertain that the government would be relying on this prior incident as the justification for Detective Boyle's pat-frisk of Defendant was to read the government's opposition.

Accordingly, Defendant has failed to demonstrate any of the three requirements for a *Brady* violation, and Defendant's motion should be denied.

IV. Conclusion

For these reasons, it is this court's RECOMMENDATION that Defendant's motion to dismiss be denied.[5]

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: May 29, 2015

---

[5] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.